UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SYRIS T. BIRKLEY,

                      Plaintiff,

v.                                                                       Case No. 25-cv-0204-bbc

DENITA R. BALL, et al.,

                      Defendants.

---

## DECISION AND ORDER

---

      Syris Birkley is incarcerated at the Milwaukee County Jail and representing himself in this 42 U.S.C. §1983 case. He is proceeding on a First Amendment claim in connection with allegations that, pursuant to a Milwaukee County Jail policy, his incoming mail is scanned and electronically saved by ViaPath Technologies and that he can only view digital copies of his mail on a jail-issued tablet. Dkt. No. 7 at 5. On May 27, 2025, Milwaukee County and Milwaukee County Sheriff Denita Ball filed a motion to dismiss. Dkt. No. 17. That same day, ViaPath Technologies also filed a motion to dismiss. Dkt. No. 21. For the reasons explained below, the Court will grant the Defendants' motions.

      The Court provided a thorough summary of the complaint's allegations in its March 26, 2025, screening order, so it is unnecessary to do so in this decision. Dkt. No. 7. As noted in the screening order, it is difficult to identify the complaint's factual allegations because they are buried in pages of legal analysis and case citations, none of which are required to state a claim under Fed. R. Civ. P. 8.. As best as the Court could tell, the primary focus of the complaint was Birkley's concerns about the handling of his mail. Specifically, Birkley states that, since October 29, 2024, his "legal and regular mail" has been opened and scanned without his consent and outside of his

presence. Although Birkley does not describe the contents of the mail that he characterizes as "legal mail," he suggests that many, if not all, of the mail items were sent by courts or public agencies. The Court also notes that, per the Wisconsin Circuit Court Access website, Birkley is representing himself against criminal charges pending in Milwaukee County Case No. 2024CF4650, and he has not identified any lawyer with whom he is in contact about that or any other case. Birkley also alleges that ViaPath Technologies scans and stores all incoming mail, which inmates must then view on a jail-issued tablet. Birkley explains that he chose to opt out of the jail's mail policy, but Defendants will not provide him with his mail or hard copies of his mail.

The Court allowed Birkley to proceed on a claim based on allegations that an agreement between Milwaukee County and ViaPath Technologies authorizes ViaPath Technologies to scan all incoming mail and provide digital copies to inmates, which may be accessed on a jail tablet or at a jail kiosk. The Court concluded, however, that Birkley did not state a claim based on allegations that his non-legal mail was opened and read outside of his presence because the First Amendment does not prohibit jail officials from doing so. *See Wolff v. McDonald*, 418 U.S. 539, 575-76 (1974); *see Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) ("we held that it was entirely proper for prisoner officials to inspect mail for contraband"). The Court also concluded that Birkley failed to include sufficient factual allegations from which the Court could reasonably infer that his "legal mail" was being opened and read outside of his presence. The Court explained that just because mail concerns legal issues does not mean that it is "legal mail" deserving of heightened protections under the First Amendment. Without factual allegations supporting an inference that privileged communications between Birkley and his lawyer were read outside of his presence, Birkley failed to state a claim. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 803-04 (7th Cir. 2010).

Defendants filed motions to dismiss on May 27, 2025. The County Defendants' primary argument is that Birkely fails to state a claim because the First Amendment protects an inmate's free expression and access to mail; it does not protect privacy. Indeed, it has long been held that "the interest of the state in monitoring the nonprivileged correspondence of the pretrial detainees justifies the minor burden that it places on their freedom to communicate with friends and relatives." *Smith v. Shimp*, 562 F.2d 423, 425 (7th Cir. 1977). Defendants explain that the jail's policy does not prohibit communication or censor communication; it merely converts hard copy mail into a digital format viewable by an inmate on a jail tablet and/or jail kiosk. As noted in the policy, *see* Dkt. No. 18-1 at 1, this conversion from paper to digital format promotes the safety and security of the facility and prevents the introduction of contraband, namely of drugs applied to paper.

Birkley argues in response that, because he is "not a prisoner" but "a pretrial detainee, [he] retain[s] all [his] rights." Dkt. No. 35 at 2-3. He also argues that mail from courts, court officials, and government agencies should not be screened but should be treated as privileged communication similar to how communications between inmates and their lawyers are treated. *Id.* at 4. Both arguments fail.

First, courts have consistently held that "[n]either the right of free speech nor the right of privacy is absolute, but the interests they protect must be considered against important governmental interests in regulation." *Smith*, 562 F.2d at 425. Jail officials have a legitimate interest in maintaining the safety and security of the jail, and the appellate court long ago explained that policies that deter a substantial threat to jail security justify the burden imposed on a pretrial detainee's freedom to communicate in a private manner. *Id.* at 426. As the sophistication of those desiring to break the law has evolved, so too have the efforts of jail officials to maintain security

3

by keeping out contraband. It is no secret that bad actors have sought to introduce drugs into jails and prisons by many means, including coating paper that is then smoked, chewed, or otherwise consumed. Jails and prisons have therefore been forced to develop policies that allow inmates to access their mail while depriving bad actors the opportunity to introduce drugs into the jail. The Court concludes that, given these circumstances, the burden imposed on inmates from having to access their mail in a digital format rather than in hardcopy is justified. After all, as the Supreme Court has acknowledged, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Next, contrary to Birkley's suggestion, it is well settled that not all mail that involves a legal issue is considered "legal mail" for First Amendment purposes. There is no constitutional harm when public documents that "prison officials have as much right to read as the prisoner" or "routine and nonsensitive" nonpublic documents are opened outside the prisoner's presence. *Guajardo-Palma*, 622 F.3d at 804-06 (holding that "as long as the prison confines itself to opening letters that either are public or if private still are not of a nature that would give the reader insights into the prisoner's legal strategy, the practice is harmless and may be justified by the volume of such mail that a litigious prisoner can generate"). Birkley does not allege that any privileged communication between him and his attorney was opened outside of his presence, and his assertions that public or nonconfidential communications from courts and government agencies should be treated the same as privileged communications with a lawyer is without merit. *See Helmueller v. Wilson*, No. 23-1962, 2023 WL 8274582 (7th Cir. Nov. 30, 2023) (holding that only

"correspondence from a lawyer in pending or impending litigation or from a court about a non-public matter" must be opened in an inmate's presence).

Birkley asserts that, per the policy, if he opts out, his mail will either be placed in his personal property or returned to the sender, which may interfere with his access to the courts and his ability to comply with court deadlines. However, to state an access-to-the-courts claim, a plaintiff must allege that he has lost a legal claim or suffered an actual injury, and Birkley makes no such allegation. *See In re Maxy*, 675 F.3d 658 660-61 (7th Cir. 2012) ("[T]o satisfactorily state a claim for an infringement of the right of access, prisoners must also allege an actual injury."). Birkley alleges only that he *may* miss a deadline, which *could* lead to his case being dismissed, but a plaintiff must allege an *actual* injury, not a *risk* of injury, to state a claim. Birkley also asserts that, even though he opted out of the mail policy, the jail continues to scan and provide him with digital copies of his mail. As explained, the jail's policy of providing inmates with digital copies rather than hard copies of their mail does not run afoul of the First Amendment. The fact that the jail is not abiding by its own mail policies is not of constitutional significance. *See, e.g., Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (holding that §1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

In short, Defendants' motion to dismiss must be granted because Birkley fails to state a claim upon which relief can be granted. Nothing in the complaint suggests that the jail has denied Birkley access to his mail and the burden to his privacy is justified by the jail's legitimate goal of maintaining safety and security. Because the complaint fails to state a claim upon which relief can be granted, the Court need not address the additional arguments raised by ViaPath Technologies in its motion.

5
Case 2:25-cv-00204-BBC   Filed 09/15/25   Page 5 of 7   Document 42

**IT IS THEREFORE ORDERED** that the County Defendants' motion to dismiss (Dkt. Nos. 17) is **GRANTED** and ViaPath Technologies' motion to dismiss (Dkt. No. 21) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that Birkley's letter motion for an order (Dkt. No. 23) and his motion for preliminary injunction (Dkt. No. 24) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined and emailed to DLSFedOrdersEastCL@doj.state.wi.us.

Dated at Green Bay, Wisconsin on September 15, 2025.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.